**Robin ROSARIO, Petitioner pro se,**

v.

**UNITED STATES of America, Respondent.**

**No. 03 Civ. 0471(JES), 97 CR. 705–2(JES).**

United States District Court, S.D. New York.

Dec. 20, 2004.

---

Robin Rosario, Reg. No. 52388–066, FCI Fort Dix, Fort Dix, NJ, Petitioner pro se.

David N. Kelley, United States Attorney for the Southern District of New York, New York, NY, Margaret A. Cieprisz, Assistant United States Attorney, for Respondent, of Counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Petitioner *pro se* Robin Rosario (*"Rosario"*) moves to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 on the grounds that 1) he received ineffective assistance of trial counsel and 2) the sentence imposed on him by the Court was improper. For the reasons set forth below, Rosario's petition is dismissed.

### BACKGROUND

In a two-count indictment filed on November 23, 1998 (the *"Original Indictment"*), Rosario, his common law wife Maria Chavez (*"Chavez"*), and another defendant, were charged with conspiracy to distribute and possession with intent to distribute heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C), and with possession with intent to distribute approximately 18.4 grams of heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. Rosario remained free on bail, and appeared before the Court for several pretrial conferences. On April 14, 2000, Rosario and Chavez met with Rosario's attorney, Charles

Lavine, in the courthouse lobby, in advance of another pre-trial conference scheduled for that day. Following the meeting, Rosario and Chavez never appeared in court that day, and instead fled to Ohio. They were arrested in Ohio in September, 2000, and a superseding indictment was filed on September 13, 2000 against Rosario, Chavez, and another defendant (the *"Superseding Indictment"*). Count One of the Superseding Indictment charged Rosario with conspiracy to distribute and possession with intent to distribute a kilogram and more of heroin between 1992 and 1995 in violation of 21 U.S.C. § 846. Count Two charged Rosario with conspiracy to distribute and possession with intent to distribute heroin from April 1996 to May 1996 in violation of 21 U.S.C. § 846. Count Three charged Rosario with distributing and possession with intent to distribute approximately 18.4 grams of heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. Finally, Count Four charged Rosario with unlawful failure to appear before a court for a pre-trial conference in violation of 18 U.S.C. § 3146(a)(1) and (b)(1)(A)(i).

On October 23, 2000, this time represented by Daniel A. Hochheiser, Rosario pleaded guilty before the Court to Counts Two, Three, and Four of the Superseding Indictment pursuant to a plea agreement dated October 19, 2000 (the *"Plea Agreement"*). *See* Government's Response (*"Gov. Resp."*), Exhibit (*"Exh."*) B. In the Plea Agreement, Rosario stipulated that his crimes involved in the aggregate more than 400 but less than 700 grams of heroin. *See id.* at 2. He further stipulated to a base offense level of 28, a two-level enhancement for obstruction of justice in connection with the bail jumping charge, a two-level adjustment for acceptance of responsibility, and a further one-level adjustment for timely notification of intention to plead guilty. *See id.* at 2–3. Rosario and the Government agreed that under the United States Sentencing Guidelines (the *"Sentencing Guidelines"*) Rosario had a Criminal History Category III, and that his Sentencing Guidelines range should be between 87 and 108 months. *See id.* at 3. Rosario also agreed in the Plea Agreement to "neither appeal, nor otherwise litigate under Title 28, United States Code, Section 2255, any sentence within or below the stipulated Sentencing Range of 87 to 108 months...." *Id.* at 4–5.

Rosario was sentenced by the Court on January 26, 2001 to a term of 87 months' imprisonment on Counts Two and Three, and to a concurrent term of five (5) years' imprisonment on Count Four. *See* Judgment of Robin Rosario, filed on February 1, 2001. During the sentencing, the Court informed Rosario that although Rosario was technically free to file an appeal from his sentence, it was the Court's finding that any such appeal would not be meritorious given Rosario's waiver in the Plea Agreement of his right to appeal a sentence which did not exceed the stipulated Sentencing Guidelines range. *See* Sentencing Transcript, dated January 25, 2001 (*"Sent. Tr."*) at 15–16. Rosario indicates in the petition currently before the Court that he, proceeding *pro se*, timely filed a notice of appeal on February 5, 2001. *See* Rosario's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, and Correct Sentence, filed on January 22, 2003 (the *"Petition"*) at 7. There exists, however, no record of Rosario's notice of appeal having been filed either with the Court or with the Court of Appeals for the Second Circuit, and Rosario has never provided a copy of his notice of appeal to the Court. In any event, Rosario took no further actions to pursue his direct appeal and does not presently contend that an appeal was ever pursued.

## DISCUSSION

Rosario's first formal challenge to his sentence is in the Petition currently before the Court. Construing the Petition liberally, as the Court must when interpreting a pleading submitted by a *pro se* petitioner, *see, e.g., Hemphill v. New York,* 380 F.3d 680, 687 (2d Cir.2004), Rosario's claims fall into two categories: (1) ineffective assistance of trial counsel in violation of his Sixth Amendment rights, and (2) errors committed by the Court in determining his sentence.

### I. *Rosario's Petition is Untimely*

■ The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996), imposed a one-year limitation period for the filing of a motion seeking relief pursuant to 28 U.S.C. § 2255. *See* 28 U.S.C. § 2255. In this case, the one-year limitation period began to run from the date Rosario's conviction became final. The judgment of conviction was entered on the Court's docket on February 1, 2001. Because Rosario failed to pursue a direct appeal, his conviction became final on February 15, 2001, and his Petition should have been filed no later than February 15, 2002. *See* Fed. R.App. P. 4(b); Fed. R.App. P. 26(a). Although Rosario's Petition was received by the Court's *Pro Se* Office on December 19, 2002 and was filed on January 22, 2003, under what is known as the "prison mailbox" rule, the Petition is deemed to have been filed on the date it was deposited by Rosario in the prison mail box—December 3, 2002. *See, e.g., Noble v. Kelly,* 246 F.3d 93, 97–98 (2d Cir.2001). Nevertheless, even the December 3, 2002 filing date was well past the expiration of the one-year limitation period, and the Petition, therefore, is untimely.

### II. *Rosario's Waiver of his Right to Seek Relief Pursuant to 28 U.S.C. § 2255 was Valid and Enforceable*

■ Even if the Petition had been timely filed, under the Plea Agreement Rosario waived his rights to seek collateral relief pursuant to 28 U.S.C. § 2255 so long as the Court sentenced him within the stipulated Sentencing Guidelines range. It is well settled that "a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable." *United States v. Djelevic,* 161 F.3d 104, 106 (2d Cir.1998). "In no circumstance ... may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal ... then appeal the merits of a sentence conforming to the agreement," for to permit such a defendant to escape the fairly bargained-for consequences of [his] agreement with the government would "render the plea bargaining process and the resulting agreement meaningless."

*United States v. Monzon,* 359 F.3d 110, 117 (2d Cir.2004) (quoting *United States v. Salcido–Contreras,* 990 F.2d 51, 53 (2d Cir. 1993) (*per curiam* )).

■ A waiver of collateral review rights, however, "does not foreclose an attack on the validity of the process," such as the Plea Agreement in this case, "by which the waiver has been procured." *Frederick v. Warden, Lewisburg Corr. Facility,* 308 F.3d 192, 195 (2d Cir.2002). Indeed, the Court will not enforce a waiver of appellate rights unless the " 'record 'clearly demonstrates' that the waiver was both knowing (in the sense that the defendant fully understood the potential consequences of his waiver) and voluntary.' " *Monzon,* 359 F.3d at 116 (quoting *United States v. Ready,* 82 F.3d 551, 557 (2d Cir. 1996)). In addition, a waiver may be inval-

idated if a defendant received ineffective assistance of counsel at the time he entered into the plea agreement. *See Monzon,* 359 F.3d at 118–19 (stating that a waiver "would be unenforceable if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious"); *Djelevic,* 161 F.3d at 107 (suggesting that receiving ineffective assistance of counsel at the time of entering into a plea agreement might cast doubt upon the validity of defendant's waiver).

### A. *Rosario's Waiver was Knowing and Voluntary*

 Rosario contends that he did not fully understand the consequences of entering into the Plea Agreement. He points out that he speaks very little English and that, being a novice to the criminal justice system, he blindly followed his attorney's advice without truly understanding the nature of what was happening. *See* Petition at 5, 19. In deciding whether Rosario's waiver of his right to seek collateral review was knowing and voluntary, the Court may consider factors such as (1) whether Rosario signed the Plea Agreement, (2) whether Rosario stated in the course of his plea allocution that he read and understood the Plea Agreement, (3) whether Rosario failed to pursue direct appeal from his sentence, and (4) whether Rosario failed to assert in his Petition that he had not understood the waiver. *See Garcia–Santos v. United States,* 273 F.3d 506, 508 (2d Cir.2001). Statements made by a petitioner in his plea allocution carry "a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

Setting aside the fact that Rosario's previous New York State Court convictions must have afforded him at least a brief introduction to the criminal justice system, Rosario's claims are simply contradicted by the record. First, Rosario signed the Plea Agreement on October 23, 2000. *See* Gov. Resp., Exh. B; *see also* Plea Transcript, dated October 23, 2000 (*"Plea Tr."*) at 37. When, during his guilty plea allocution, the Court specifically questioned Rosario with respect to his understanding of the Plea Agreement, Rosario confirmed his understanding that he was pleading guilty pursuant to a plea arrangement. *See id.* at 36. He indicated to the Court that he knew the contents of the Plea Agreement, and that the Plea Agreement had been translated for him. *See id.* at 29, 36–37.[1] Rosario also responded in the affirmative to the Court's question as to whether he understood that under the terms of the Plea Agreement he waived his right to appeal a sentence within the stipulated Guidelines Range. *See id.* at 37. Furthermore, in response to the Court's questions, Rosario stated that his mind was clear, that he understood what the Court was telling him, and that he had no difficulties communicating with his attorney. *See id.* at 35.

As for the remaining factors set forth above, as the Court has already noted, Rosario did not pursue an appeal following the imposition of his sentence, nor does he currently contend that at the time he entered into the Plea Agreement he failed to understand that he would be waiving his right to seek collateral review. Accordingly, the Court concludes that Rosario knowingly and voluntarily waived his right to challenge his sentence under 28 U.S.C. § 2255.

---

1. Counsel for Chavez informed the Court that both Rosario and Chavez had their plea agreements read to them by a court certified interpreter on a Friday preceding the date of the plea hearing. *See* Plea Tr. at 8.

### B. *Rosario Received Effective Assistance of Trial Counsel*

 Rosario also contends that his waiver of collateral review should not be enforced because he received ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that (1) "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms," *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See also United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir.2001) (*per curiam*) ("To evaluate a claim that a guilty plea was involuntary or unknowing due to ineffective assistance of counsel, we use the familiar framework established in *Strickland v. Washington* . . . .").

The Court concludes that Rosario has failed to demonstrate deficient performance by his trial counsel. In his Petition, Rosario contends that he pleaded guilty as a result of bad advice from trial counsel, driven by trial counsel's failure to conduct an investigation as well as by fear that he was not ready to go to trial. *See* Petition at 29. In addition, Rosario contends that trial counsel should not have permitted him to agree to the quantity of heroin specified in the Plea Agreement (i.e., 400–700 grams). *See id.* at 12, 18. In fact, Rosario contends that, were it not for the advice he received from his attorney, he would have informed the Court during his plea allocution that he intended to plead guilty to crimes involving only 18.4 grams of heroin. *See id.* at 18.

As an initial matter, the Court notes that there was nothing deficient in trial counsel's advice to plead guilty pursuant to the Plea Agreement, as a result of which Rosario was spared any exposure on Count One of the Superseding Indictment, which charged Rosario with distribution and possession with intent to distribute of one kilogram or more of heroin. The guilty plea also afforded Rosario the benefit of a two-level adjustment for acceptance of responsibility and a one-level adjustment for timely notification of intent to plead guilty. More fundamentally, however, the Court is entitled to rely on Rosario's statements to the Court during his plea allocution, made with the assistance of a translator, that he understood the terms of the Plea Agreement and the consequences of his guilty plea, that he discussed both with his attorney, that the quantity of heroin Rosario was involved with was less than one kilogram, and that he was satisfied with his trial counsel's representation. *See* Plea Tr. at 35–37, 39, 45–46; *see also Blackledge*, 431 U.S. at 74, 97 S.Ct. 1621 ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *Hernandez*, 242 F.3d at 112–13 (noting that the district court was entitled to rely upon defendant's sworn statements made in open court).

Because the Court finds Rosario's allegations to be unsupported by the record and wholly conclusory, Rosario's ineffective assistance of counsel claim must fail. Furthermore, having already concluded that Rosario's waiver of his right to seek collateral review under 28 U.S.C. § 2255 was knowingly and voluntarily made, the Court holds that the waiver is enforceable and, consequently, bars consideration of Rosario's remaining claims.

### III. *Rosario's Claims are Procedurally Barred and Meritless*

 Even assuming arguendo that Rosario's remaining claims were not

barred by his waiver, the Court finds that Rosario's claims challenging the length of his sentence are procedurally barred due to Rosario's failure to raise them on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Specifically, Rosario contends that the Court failed to consider whether his sentence should have been adjusted by two points pursuant to the safety valve provision of the Sentencing Guidelines, that the Court incorrectly increased his Sentencing Guidelines range by two points for obstruction of justice, that the Court sentenced him for an offense not charged in the Original Indictment, and that the Court incorrectly based its sentence on the quantity of drugs other than 18.4 grams charged in the Original Indictment. *See* Petition at 9, 31–34, 37–41. A petitioner may overcome procedural default only if he is able to demonstrate "either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622, 118 S.Ct. 1604 (citations omitted). In his Petition, however, Rosario does not advance any explanation for his failure to pursue a direct appeal, nor does he attempt to demonstrate cause or make any claim of actual innocence. Consequently, Rosario's claims challenging the length of his sentence are procedurally barred.

In addition to being procedurally barred, Rosario's claims challenging the length of his sentence are also meritless and border on being frivolous. Because of his previous criminal history, Rosario did not qualify to receive the benefits of the Sentencing Guidelines' safety valve provision. *See* Sentencing Guidelines §§ 5C1.2(a)(1), 2D1.1(b)(6). The two-point increase for obstruction of justice was based on Rosario's bail jumping, a charge to which he pleaded guilty. As for the offenses to which Rosario pleaded guilty, he of course did not plead guilty to the charges contained in the Original Indictment, but rather to Counts Two, Three and Four of the Superseding Indictment. Finally, Rosario agreed in the Plea Agreement that the quantity of heroin involved in his crimes was *in the aggregate* 400–700 grams.

The only claims in the Petition that, but for the effective waiver, would not be procedurally barred, are Rosario's ineffective assistance of counsel claims. *See Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). In addition to claims that his trial counsel, Daniel Hochheiser, was ineffective in advising Rosario to plead guilty and to enter into the Plea Agreement (claims which, as the Court has already determined, are without merit), Rosario also contends that Hochheiser was ineffective because he failed to present to the Court evidence that Rosario was indicted on charges relating only to 18.4 grams of heroin, instead of the 400–700 grams agreed to by Rosario in the Plea Agreement, because he failed to object to errors in the Pre–Sentence Investigation Report (the *"PSR"*) prepared by the Probation Department prior to Rosario's sentencing, and because he advised Rosario against addressing the Court at sentencing. *See* Petition at 12–13. Furthermore, Rosario contends that his original trial counsel, Charles Lavine, was ineffective because it was Lavine who advised Rosario to flee on April 10, 2000. *See id.* at 16–17.

■ "A defendant who pleads guilty ... while represented by counsel may not assert independent [ineffective assistance of counsel] claims relating to events occurring prior to the entry of the guilty plea." *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir.1996). In this case, Rosario's claim that he failed to appear in court based on the advice he received from Lavine not only relates to the conduct which preceded his guilty plea, but is plainly contradicted

by his statements to the Court during his plea allocution, in which he indicated that, regardless of what Lavine may have told him, he made the decision to run away while fully knowing that he was required to appear in court pursuant to the terms of his bail. *See* Plea Tr. at 42–43. Furthermore, because the Court has already concluded that the sentence imposed on Rosario was proper, Rosario's claim that he fled at the advice of Lavine is essentially moot, since the sentence of five (5) years' imprisonment on the bail jumping charge was imposed by the Court to run concurrently with the sentence of 87 months on Counts Two and Three.

Finally, Rosario's claims relating to Hochheiser's representation not only fail to pass the *Strickland* test, but once again are plainly contradicted by the record. Hochheiser need not have alerted the Court that the quantity of 400–700 grams of heroin was neither in the Original nor in the Superseding Indictment because Rosario himself agreed in the Plea Agreement that that was the aggregate amount of heroin involved in the crimes to which he pleaded guilty. As for Hochheiser's failure to make objections to the PSR, the record indicates that Hochheiser did in fact make certain objections to the PSR, that he reviewed the PSR with Rosario and had it translated for Rosario into Spanish. *See* Sent. Tr. at 2–4. The record also indicates that, although Hochheiser advised Rosario that it may not serve his interests to address the Court at sentencing, Rosario did in fact address the Court prior to the imposition of his sentence. *See id.* at 9.

## CONCLUSION

Having carefully considered Rosario's remaining claims, the Courts finds them wholly without merit.[2] Because Rosario's Petition is untimely and his claims are both procedurally barred and without merit, the Petition must be dismissed. In addition, because Rosario has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir.2000); *Tankleff v. Senkowski*, 135 F.3d 235, 241 (2d Cir.1998). The Clerk of the Court is hereby directed to close the above-captioned action.

**It is SO ORDERED.**

---

**2.** To the extent Rosario contends that the Supreme Court's ruling in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), requires a reduction of his sentence because the Court enhanced his offense level based on its own factual finding, such claim must be dismissed as it is expressly foreclosed by current Second Circuit law. *See United States v. Gayle,* 389 F.3d 406, 411 (2d Cir.2004) (refusing to apply *Blakely* to the Sentencing Guidelines "unless and until the Supreme Court rules that we must"); *see also United States v. Mincey,* 380 F.3d 102 (2d Cir.2004). As the Court sentenced Rosario at the lower end of the Sentencing Guidelines range and Rosario's sentence, therefore, did not exceed the statutory maximum, the sentencing enhancement Rosario received is valid and is not affected by *Blakely.*