11-2242-cr
United States v. Rene Rodriguez

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**
August Term, 2012

(Argued: March 5, 2013          Decided: August 8, 2013)

Docket No. 11-2242-cr

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

        Appellee,

    v.

RENE RODRIGUEZ,

        Defendant-Appellant.[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Before: LYNCH, LOHIER, and CARNEY, Circuit Judges.

Defendant-appellant Rene Rodriguez pleaded guilty before the United States District Court for the Northern District of New York (Suddaby, J.) to one count of possessing with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). On appeal, Rodriguez asks the Court to vacate his conviction because the District Court failed to comply with Federal Rule of Criminal Procedure 11(b)(1)(I) and because he received ineffective assistance of counsel. We AFFIRM the judgment of the District Court.

---

[*] The Clerk of Court is respectfully directed to amend the official caption to conform with the above.

STEVEN Y. YUROWITZ, Newman & Greenberg, New York, NY, *for* Defendant-Appellant.

BRENDA K. SANNES, Assistant United States Attorney (Paula Ryan Conan, Carla Freedman, Assistant United States Attorneys, and Richard S. Hartunian, United States Attorney for the Northern District of New York, *on the brief*), Syracuse, NY, *for* Appellee.

LOHIER, Circuit Judge:

Defendant Rene Rodriguez appeals from a judgment of conviction entered May 24, 2011, in the United States District Court for the Northern District of New York (Glenn T. Suddaby, Judge). Rodriguez pleaded guilty to possessing with intent to distribute 500 grams or more of cocaine. Due to the filing of a prior felony information, the District Court imposed a statutory mandatory minimum sentence of 120 months' imprisonment. Rodriguez now seeks to vacate his conviction and sentence for two reasons. First, he claims that the District Court violated Federal Rule of Criminal Procedure 11(b)(1)(I), which requires district courts in the course of guilty plea proceedings to "inform the defendant of, and determine that the defendant understands . . . any mandatory minimum penalty." Second, Rodriguez argues that he received ineffective assistance of counsel. Because Rodriguez, who failed to object in the district court to the alleged Rule 11 errors, has not shown that any error affected his substantial rights, and because we decline to consider his ineffective assistance of counsel claim on direct appeal, we affirm.

# BACKGROUND

Rodriguez was charged with one count of possessing with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) ("Count One"), and one count of distributing and attempting to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 846. In October 2010, pursuant to 21 U.S.C. § 851, the Government filed a prior felony information based on Rodriguez's previous state felony drug conviction, thus subjecting Rodriguez to a doubling of the applicable mandatory minimum sentence, from five years to ten years.

A.  Rodriguez's Agreements with the Government

On January 27, 2011, Rodriguez and his counsel, Stuart LaRose, signed a written plea agreement in which Rodriguez agreed to plead guilty to Count One. The agreement made clear that Rodriguez would be subject to a mandatory minimum term of imprisonment of ten years and a maximum term of life imprisonment. It explained that "the sentence to be imposed upon him is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines." The parties stipulated that Rodriguez's offense level under the Guidelines was 26 and that the Government would recommend a 2- or 3-level reduction for acceptance of responsibility if he refrained from obstructing justice prior to sentencing. The agreement also stated that Rodriguez "waives any and all rights . . . to appeal or collaterally attack his conviction and any sentence of imprisonment of 120 months or less."

Also on January 27, Rodriguez signed a separate agreement ("Exhibit A")[1] with the Government, in which he made additional promises in exchange for the Government's promise to consider, among other things, moving for a downward departure to allow the court to impose a sentence below the ten-year mandatory minimum term of imprisonment.

B. Guilty Plea

The day after signing the plea agreement and Exhibit A, Rodriguez pleaded guilty to Count One. During the plea hearing, the District Court asked the Government to inform Rodriguez and the Court about the "sentencing possibilities":

THE COURT: And Ms. Freedman, would you inform this defendant and the Court of the sentencing possibilities in this case?

THE GOVERNMENT: Yes, Your Honor. As a result of the defendant's plea here today, he does face a potential maximum sentence of life in prison. There is a mandatory minimum term of imprisonment of ten years. He faces a term of supervised release of at least eight years up to life, potential fine of $4 million, and a special assessment of $100.

THE COURT: And have you discussed the projected sentencing guideline range with Mr. LaRose?

THE GOVERNMENT: Yes. I believe that the total offense level, once there is acceptance and assuming no other downward departure, would be 23. My preliminary calculation of the defendant's criminal history category is II. So assuming that's correct, which obviously is subject to a probation report, I believe that his range would be 51 to 63 months. However, under the statute the Court would be bound to sentence him to the ten years unless the government were to make a motion of some sort.

The District Court then asked Rodriguez about the Guidelines:

---

[1] The parties refer to this agreement in their briefs as "Exhibit A."

4

THE COURT: Mr. Rodriguez, has your attorney discussed the sentencing guidelines with you and how they apply to your case?

THE DEFENDANT: About what could potentially happen to me?

THE COURT: Correct.

THE DEFENDANT: Yes, we discussed it.

THE COURT: And you understand I'm going to consider the sentencing guidelines, that's one of the things I need to look at when I determine what your sentence will be?

THE DEFENDANT: Okay.

THE COURT: Do you understand that the Court won't be able to determine what the guidelines are in your case until after probation has completed the Presentence Report? Do you understand that?

THE DEFENDANT: Yes.

The District Court then explained the factors that it would consider when sentencing him

and asked Rodriguez the following:

THE COURT: Can you tell me, do you realize the penalties that could be imposed upon you after pleading guilty?

THE DEFENDANT: Yes.

THE COURT: Have any promises been made to you as to what the sentence might be other than what's contained in your plea agreement?

THE DEFENDANT: No.

THE COURT: And you understand that you may not appeal your sentence if I sentence you to 120 months or less?

THE DEFENDANT: So if I take 120 months as my sentence, I can't do anything.

THE COURT: If I sentence you to 120 months or less, you may not appeal your sentence. Do you understand that?

5

THE DEFENDANT: So I would have to keep the sentence of 120 months, would be unable to do anything?

THE COURT: You wouldn't be able to appeal it, correct.

THE DEFENDANT: I understand.

The District Court then asked Rodriguez's counsel about his background, his experience, and his work on Rodriguez's case. Defense counsel answered that he had spent about 25 to 30 hours on Rodriguez's case, "[m]ost recently . . . in excess of an hour with [Rodriguez and] an interpreter reviewing the plea agreement and the sentencing guidelines." Thereafter, the District Court specifically observed that Rodriguez "underst[ood] the charges against [him] and the consequences of pleading guilty," and it therefore accepted Rodriguez's guilty plea.

C. Presentence Report

The Presentence Report ("PSR") prepared for Rodriguez's sentence calculated a criminal history category of II and total offense level of 26 and recommended against any downward adjustment for acceptance of responsibility because Rodriguez allegedly had threatened a witness two months after pleading guilty. The PSR also explained that the mandatory minimum sentence of 10 years rather than the otherwise applicable Guidelines range of 70 to 87 months was proper pursuant to U.S.S.G. § 5G1.1(b). Rodriguez objected only to that part of the PSR that recommended that he should not be awarded a reduction for acceptance of responsibility.

6

D. Sentencing

During Rodriguez's sentencing in May 2011, the Government urged the District Court to impose the statutory mandatory minimum sentence. Defense counsel argued that a 48-month sentence was "reasonable" given Rodriguez's cooperation with the Government, his family situation, criminal history, and employment record, as well as his "extreme remorse." The District Court imposed the mandatory minimum sentence of 120 months. Neither party objected to the sentence.

E. Post-Sentence Letter

Soon after his sentencing, Rodriguez informed the District Court that he was dissatisfied with his counsel's representation. Among other things, he claimed that defense counsel failed to spend enough time with him before sentencing, had forced Rodriguez to "sign a paper for 10 years and said from Level 26 [Rodriguez] was going to do Level 23," and falsely represented that Rodriguez's prior "felony was not going to be used against" him.

**DISCUSSION**

A. Rule 11

Rodriguez primarily contends that the District Court violated Rule 11(b)(1)(I) by (1) not personally advising him during the plea of the ten-year mandatory minimum and instead asking the Government to describe the applicable penalties, and (2) not ensuring that he understood the mandatory minimum sentence. Rodriguez urges us to review his claim using a harmless error standard because his counsel did not "understand the

7

significance of the mandatory minimum" and, as a result, "Rodriguez can hardly be faulted for failing to object or raising the issue earlier." We are not persuaded. At Rodriguez's sentencing, the Government explicitly requested the statutory mandatory minimum sentence, and the District Court stated that it was imposing a mandatory minimum sentence. At that point, both Rodriguez and his counsel were on notice that a statutory mandatory minimum applied and could have objected.

Because Rodriguez did not raise any objections with the District Court regarding the applicability of a mandatory minimum sentence, we review for plain error. United States v. Vonn, 535 U.S. 55, 59 (2002). In United States v. Vaval, we explained plain error review in the context of a Rule 11 violation:

> Plain error is: (i) error, that is (ii) plain, and (iii) affects substantial rights. Where these conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if . . . the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. In the context of a Rule 11 violation, to show plain error, a defendant must establish that the violation affected substantial rights and that there is a reasonable probability that, but for the error, he would not have entered the plea.

404 F.3d 144, 151 (2d Cir. 2005) (quotation marks omitted). Rodriguez bears the burden of establishing plain error. See Vonn, 535 U.S. at 59.

With that standard of review in mind, we need not address Rodriguez's claims of error,[2] because Rodriguez has not shown that any alleged error affected his substantial

---

[2] Although we have never held, as Rodriguez urges, that delegating to the Government the responsibility for explaining the applicable penalties constitutes reversible error under Rule 11, we recognize that other circuit courts appear to have taken varying approaches when forced to resolve this specific issue. Compare United States v.

8

rights:  there is no reasonable probability that Rodriguez would have refrained from pleading guilty but for the purported error.  In this regard, several aspects of the record persuade us that Rodriguez was aware of the possibility of a 120-month sentence, and that any Rule 11 error did not affect his decision to plead guilty.  See United States v. Dominguez Benitez, 542 U.S. 74, 85 (2004).

First, Rodriguez was informed prior to sentencing about the ten-year mandatory minimum sentence, but never objected to it or sought to withdraw his plea.  For example, the PSR, which Rodriguez reviewed with counsel, stated that both the Guidelines sentence and the statutory minimum sentence were ten years.  Second, both the District Court and the Government mentioned the mandatory minimum at Rodriguez's sentencing.  At no point, however, did Rodriguez object to or raise questions about the mandatory minimum sentence.  Third, the plea agreement made clear that its terms were not binding on the District Court, that the court could decline to follow any sentencing

Corso, 549 F.3d 921, 929 (3d Cir. 2008) ("[N]othing in the plain language of Rule 11(b)(1) permits a district court to delegate its responsibilities to 'inform' and 'determine' to the government; the Rule provides that 'the court must' do both of those things."), with United States v. Jones, 143 F.3d 1417, 1420 (11th Cir. 1998) (rejecting suggestion that failure by district court to verbally inform defendant of statutory mandatory minimum is subject to per se reversal), United States v. Liboro, 10 F.3d 861, 865 (D.C. Cir. 1993) (noting conflicting views on whether prosecutor's statements fulfill court's Rule 11 obligation and concluding that prosecutor's statement closely tracked the Information, so district court's failure to personally state the substance of the charges was not "'total[] abdicat[ion' of] its responsibility" to the prosecutor), and United States v. Cusenza, 749 F.2d 473, 475-76 & n.1 (7th Cir. 1984) (relying on prior rejection of "a construction of [Rule 11] which literally requires that the judge personally address the defendant and inform him of the nature of the charge and . . . adopt[ion of] a flexible and practical approach which emphasizes whether the purpose to be served by the Rule has been furthered by the particular procedure utilized by the district court" (quotation marks omitted)).

9

recommendations, and that Rodriguez waived the right to appeal any sentence of 120 months or less.  The District Court explained the waiver provision to Rodriguez during the plea colloquy and confirmed that Rodriguez understood it.  Finally, the strength of the Government's evidence – including recordings over the course of one month concerning the sale of cocaine, Rodriguez's controlled sale of cocaine to a confidential source, and his post-arrest admissions – suggests that Rodriguez would have entered the plea notwithstanding the alleged Rule 11 error.  See id.

Accordingly, we reject Rodriguez's argument that he would not have pleaded guilty had he been informed by the court at the plea proceeding of the mandatory minimum sentence.  See Vaval, 404 F.3d at 152 ("Where a defendant, before sentencing, learns of information erroneously omitted in violation of Rule 11 but fails to attempt to withdraw his plea based on that violation, there can be no 'reasonable probability that, but for the [Rule 11 violation], he would not have entered the plea,' and the plain error standard is not met." (quoting Dominguez Benitez, 542 U.S. at 83)); see also United States v. Westcott, 159 F.3d 107, 112-13 (2d Cir. 1998) (district court's incorrect statement of maximum penalty at time of guilty plea had no effect on defendant's decision to plead guilty because defendant did not ask to withdraw his plea once he learned that lower maximum applied).  Rodriguez has not satisfied his burden of showing that any purported Rule 11 error by the District Court affected his substantial rights.

Without adjudicating the issues of whether the District Court fulfilled its obligations under Rule 11, we offer a few additional thoughts about the plea proceedings

10

here. In doing so, we recognize that there exists a wide range of acceptable practices throughout the Circuit relating to plea proceedings.

First, to the extent a district court asks the prosecutor to recite the information listed in Rule 11(b)(1), the court should follow up to ask the defendant if he understands the information. After the prosecutor recited the applicable penalties here, the District Court asked Rodriguez only whether he had discussed the Guidelines with counsel and whether he understood that the court would consider the Guidelines. It would have been preferable for the court also to ask Rodriguez whether he understood that the statutory mandatory minimum applied and to determine that Rodriguez understood that the statutory minimum <u>was</u> the Guidelines sentence.[3]

Second, there is an understandable reluctance during plea hearings to refer openly to a cooperation agreement. Advances in technology and the advent of the Federal

---

[3] In keeping with this suggestion, we note that Rule 11 explicitly requires a court, before accepting a plea of guilty, to inform the defendant of a number of specified matters. <u>See</u> Fed. R. Crim. P. 11(b)(1)(A)-(N). We have "adopted a standard of strict adherence to Rule 11," and "examine critically even slight procedural deficiencies to ensure that the defendant's guilty plea was a voluntary and intelligent choice, and that none of the defendant's substantial rights has been compromised." <u>United States v. Livorsi</u>, 180 F.3d 76, 78 (2d Cir. 1999) (quotation marks omitted). While minor deviations from the mandatory list of information contained in Rule 11(b)(1) may in particular circumstances constitute harmless error, it should be a simple matter for district and magistrate judges to avoid any error by adhering literally to the script required by the Rule, and for prosecutors and defense counsel to be aware of the Rule's requirements and point out to the court any failure to follow them. Rote adherence to the mandated script is not a substitute for a judge's diligence in assuring that a defendant truly understands the charges to which he is pleading guilty, the penalties that he faces, and the rights that he is waiving by entering a guilty plea. But assuring that the defendant understands these particular matters <u>is</u> a mandated part of the guilty plea procedure, precisely because the drafters of Rule 11 clearly deemed that advising the defendant of them was necessary for a guilty plea to be considered knowing and voluntary.

PACER system make us ever mindful of the significant public safety risks to cooperating defendants or the hazards to ongoing government investigations that exposing even the fact of cooperation may pose.  But we find it difficult to reconcile the tactic of remaining completely silent about such an agreement with the judicial obligation to ensure that the defendant understands the range of possible consequences of his plea and to "determine that the plea is voluntary and did not result from . . . promises []other than promises in a plea agreement[]."  Fed. R. Crim. P. 11(b)(2).  For example, where a cooperation agreement that states that the Government may make a motion to reduce the defendant's sentence is never referenced during the plea colloquy, the defendant will be unable to answer accurately the critical question of whether additional promises have been made to him concerning his sentence, and the district judge will have failed to ensure that the defendant truly understands the range of applicable penalties.  Indeed, here, Rodriguez was put in just such a quandary and answered "no" to that question, notwithstanding the existence of a separate agreement.

When necessary, judges have various tools at their disposal to reduce if not eliminate the risks that may arise from fulfilling their obligation to ensure that the defendant understands the range of potential penalties.  For example, they may delay the disclosure of a cooperation agreement or the fact that a defendant is cooperating.  Where appropriate and after making the necessary findings, they may close the courtroom during the plea proceedings, seal the transcript of the proceedings, or even opt to refer to a

cooperation agreement without specifically referring to the defendant's promise to cooperate.[4] Cf. United States v. Alcantara, 396 F.3d 189, 199-200 (2d Cir. 2005).

II.     Ineffective Assistance of Counsel

Rodriguez contends that his conviction and sentence should be vacated because he received ineffective assistance of counsel. However, the record before us lacks "the facts necessary to adjudicate a claim of ineffective assistance of counsel." United States v. Oladimeji, 463 F.3d 152, 154 (2d Cir. 2006). To evaluate Rodriguez's claim, it would be useful to know, for example, whether the cooperation agreement was ever translated for Rodriguez, defense counsel's understanding of the mandatory minimum, and why defense counsel advocated for a sentence below the mandatory minimum at sentencing. Moreover, Rodriguez's prior counsel should have an opportunity to respond to Rodriguez's ineffective assistance claim. See Sparman v. Edwards, 154 F.3d 51, 52 (2d Cir. 1998) ("We believe that a district court facing the question of constitutional ineffectiveness of counsel should, except in highly unusual circumstances, offer the assertedly ineffective attorney an opportunity to be heard and to present evidence, in the form of live testimony, affidavits, or briefs."). Accordingly, we follow our "usual practice" of not considering this claim on direct appeal and leave it for the defendant to raise in a collateral proceeding. Oladimeji, 463 F.3d at 154; see United States v. Burden, 600 F.3d 204, 227 (2d Cir. 2010).

---

[4] As one example, it may suffice that the plea agreement about which the defendant is questioned refers to the cooperation agreement. See Hon. Steven Merryday et al., Panel Five: Cooperation and Plea Agreements—Judges' Roundtable, 79 Fordham L. Rev. 85, 97 (2010).

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the District Court.