**U.S. IMMIGRATION & NATURAL-IZATION SERVICE, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**American Federation of Government Employees, AFL–CIO, Intervenor.**

**FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,**

**American Federation of Government Employees, AFL–CIO, Intervenor,**

v.

**U.S. IMMIGRATION & NATURALIZA-TION SERVICE, Respondent.**

Nos. 92–1995, 92–2131.

United States Court of Appeals, Fourth Circuit.

Argued March 1, 1993.

Decided Aug. 19, 1993.

Howard Stanley Scher, Civ. Div., United States Dept. of Justice, Washington, DC (Stuart M. Gerson, Asst. Atty. Gen., William Kanter, Civ. Div., William C. Owen, Super-

vising Atty., Scott D. Cooper, Staff Atty., Justice Management Div., United States Dept. of Justice, of counsel), for petitioner.

James Frederick Blandford, Federal Labor Relations Authority, Washington, DC, (David M. Smith, Sol., William R. Tobey, Federal Labor Relations Authority, of counsel), for respondent.

Kevin Michael Grile, Asst. Gen. Counsel, American Federation of Government Employees, AFL–CIO, Chicago, IL, (Mark D. Roth, Gen. Counsel, American Federation of Government Employees, AFL–CIO, Washington, DC, of counsel), for intervenor.

Before HALL, Circuit Judge, BUTZNER, Senior Circuit Judge, and VOORHEES, Chief District Judge for the Western District of North Carolina, sitting by designation.

## OPINION

K.K. HALL, Circuit Judge:

The Immigration and Naturalization Service (INS) petitions for review[1] of an order of the Federal Labor Relations Authority (FLRA) finding that certain terms of a collective bargaining agreement between INS and its employees are properly negotiable under the Federal Service Labor–Management Relations Statute (FSLMRS). FLRA cross-petitions for enforcement of the same order. We grant enforcement as to the agreement's "official time" provisions, but deny enforcement as to the "sexual harassment" provision.

### I.

Limited collective bargaining is available to federal employees under the FSLMRS, 5 U.S.C. § 7101 *et seq.* FLRA resolves disputes and claims of unfair labor practices under the statute, in a role "analogous to that of the National Labor Relations Board in the private sector." *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 92–93, 104 S.Ct. 439, 442, 78 L.Ed.2d 195 (1983) ["*BATF* "].

Under FSLMRS, federal agencies have a duty to negotiate in good faith over "conditions of employment." However, a matter is not a negotiable condition of employment "to the extent [it is] specifically provided for by Federal statute." 5 U.S.C. § 7103(a)(14)(C). Other limitations on the agency's duty to bargain are scattered about the statute, the most notable of which is a management rights provision. See 5 U.S.C. § 7106(a).

When an agency reaches an agreement with the representative of its employees, it must submit the agreement to the "agency head" for approval. The agency head has thirty days to approve or disapprove the agreement. If the agency head does not act within those thirty days, the agreement goes into effect automatically. The agency head does not have arbitrary authority to disapprove an agreement simply because it would have preferred a different one. It "shall approve the agreement . . . if [it] is in accordance with the provisions of this chapter and any other applicable law, rule, or regulation. . . ." 5 U.S.C. § 7114(c)(2).

### II.

On May 16, 1990, INS and the American Federation of Government Employees (AFGE) completed negotiations for a new collective bargaining agreement to cover INS' employees represented by AFGE. The proposed agreement was submitted for review to the agency head—in this case, the Department of Justice (Justice). 5 U.S.C. § 7114(c). Justice disapproved several provisions in the proposed agreement, two categories of which are still in dispute here.

AFGE petitioned FLRA to review the disapproval under 5 U.S.C. § 7117(c). FLRA ruled that the provisions were negotiable and were therefore in accordance with law. The first requires INS to grant "official" (that is, paid) time for union representatives in "statutory appeals"[2] and for preparation of unfair labor practice charges. The second states that, under certain circumstances, INS "may

---

1. See 5 U.S.C. § 7123.

2. The only "statutory appeals" identified by the parties are proceedings before the Equal Em-

ployment Opportunity Commission (EEOC) and Merit Systems Protection Board (MSPB).

be responsible" for acts of sexual harassment committed by its supervisors, "regardless of whether the specific acts complained of were know[n] or should have been known by the employer."

■ INS now petitions for review of the FLRA order. FLRA cross-petitions for enforcement. We must enforce an FLRA order unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 7123(c); *Department of Health and Human Services v. FLRA*, 844 F.2d 1087, 1090 (4th Cir.1988) (en banc). FLRA's decisions are entitled to special deference when they reflect policy choices, involve complex issues within FLRA's special expertise, or constitute reasonable interpretations of FSLMRS.[3] *BATF,* 464 U.S. at 97, 104 S.Ct. at 444; *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). We must keep in mind that, though it serves a quasi-judicial role between government agencies and their employees, FLRA is a part of the executive branch, and, so long as it remains within the broad confines imposed upon it by its enabling statute, FLRA is entitled to formulate executive policy without interference from us.

■ On the other hand, the "deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress." Accordingly, while reviewing courts should uphold reasonable and defensible constructions of an agency's enabling Act, they must not "rubber-stamp ... administra-

tive decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *BATF,* 464 U.S. at 97, 104 S.Ct. at 444 (citations omitted). Thus, treading softly but foregoing the rubber stamp, we turn to the issues before us.

### III.

### (*Official Time* )

Justice disapproved provisions in the proposed collective bargaining agreement that would grant "official" time to employees when they (i) represent employees at statutory appeals proceedings or act as a technical advisor in hearings, or (ii) prepare an unfair labor practice charge.[4]

### A.

"Official time" is the subject of a specific section of FSLMRS, 5 U.S.C. § 7131:

§ 7131. **Official time**

(a) Any employee representing an exclusive representative in the negotiation of a collective bargaining agreement under this chapter shall be authorized official time for such purposes, including attendance at impasse proceeding, during the time the employee otherwise would be in duty status. The number of employees for whom official time is authorized under this subsection shall not exceed the number of individuals designated as representing the agency for such purposes.

(b) Any activities performed by any employee relating to the internal business of a labor organization (including the solicita-

---

3. "The Authority shall provide leadership in establishing policies and guidance relating to matters under this chapter...." 5 U.S.C. § 7105(a)(1).

4. In pertinent part, with the disapproved portions underlined, the proposed agreement reads:

A. Upon request, and approval in advance, Union officials may use official time to conduct representational functions where such is authorized pursuant to, and consistent with, applicable statutes, regulations and executive orders relating to complaints, grievances, appeals and other matters involving dealings with [INS] officials. Official time for represen-

tational functions performed by Union officers and stewards will be authorized for:

(1) Representation in grievances, discrimination complaints and *appeals*.

(2) ... To prepare a ULP charge, the Local representative may be authorized up to a maximum of four hours....

\*    \*    \*    \*    \*    \*

(4) For representation at arbitrations and statutory appeal hearings.

\*    \*    \*    \*    \*    \*

(9) To act as a technical advisor or assistant employee representative in hearings. There shall be a limit of one representative so designated at a proceeding.

tion of membership, elections of labor organization officials, and collection of dues) shall be performed during the time the employee is in a nonduty status.

(c) Except as provided in subsection (a) of this section, [FLRA] shall determine whether any employee participating for, or on behalf of, a labor organization in any phase of proceedings before [FLRA] shall be authorized official time for such purpose during the time the employee otherwise would be in a duty status.

(d) Except as provided in the preceding subsections of this section—

   (1) any employee representing an exclusive representative, or

   (2) in connection with any other matter covered by this chapter, any employee in an appropriate unit represented by an exclusive representative,

shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest.

INS' primary argument is that (d) specifies the only two situations for which an agency and union may agree to provide for official time,[5] and, under the *expressio unius est exclusio alterius* rule of statutory construction, no other activities are subject to negotiation.[6]

**5.** Subsection (d) could be read to *require* "official time" for the designated activities, subject only to good-faith bargaining over the amount. We do not understand FLRA to so construe (d), though.

**6.** FLRA did not decide whether § 7131(d) directly authorized negotiation over "official time" for representation and assistance in EEOC and MSPB proceedings, though amicus AFGE urges that it does. Inasmuch as we agree with FLRA that § 7131(d) is not exclusive, we need not address this issue.

**7.** INS does suggest that § 7106(a)(2)(B), which reserves a management right "to assign work," proscribes granting "official time" generally. *See AFGE, Local 214 v. FLRA*, 798 F.2d 1525, 1530–1531 n. 8 (D.C.Cir.1986) (dicta that official time "always affects an agency's ability to assign work"). Reading the various management rights in § 7106(a) in such a categorically broad way would remove all but the most trivial matters from the bargaining table. Agencies must, notwithstanding § 7106(a), negotiate over "procedures which management officials will observe in exercising any authority under [§ 7106]."

Venerable as it is, *expressio unius* should be applied warily. *Director, Office of Workers' Compensation Programs v. Bethlehem Mines Corp.*, 669 F.2d 187, 197 (4th Cir.1982) (rule is "applied with great caution and is recognized as unreliable"). For example, rather than focus on § 7131(d) as INS does, one could just as easily start the *expressio unius* analysis with § 7131(b) (no official time for internal union matters) and conclude that Congress did not intend to absolutely prohibit official time for any other activity.[7] The problem with *expressio unius* is that it assumes that Congress both considered every conceivable situation and intended to address them all by addressing a few. See *National Petroleum Refiners Ass'n v. Federal Trade Commission*, 482 F.2d 672, 676 (D.C.Cir.1973), *cert. denied*, 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974). Where, as here, the statute displays not an effort at legislative micro-management of federal labor relations, but rather a positive intention to leave complexities and trivialities to FLRA and the bargaining table, *expressio unius* is not a particularly helpful tool.

### B.

INS also contends that MSPB has the exclusive power to authorize official time for proceedings before it. The statute INS cites (5 U.S.C. § 1204(h)) is very general, autho-

§ 7106(b)(2). This proviso has engendered the so-called "excessive interference" test. "The competing practical needs of employees and managers are weighed in the light of various factors, so as to determine whether, on balance, the impact of the proposal on management's rights is excessive when compared to the benefits afforded employees." *Nuclear Regulatory Comm'n v. FLRA*, 895 F.2d 152, 155 (4th Cir. 1990); *AFGE, Local 2782 v. FLRA*, 702 F.2d 1183, 1188 (D.C.Cir.1983).

Some "official time" proposals could excessively interfere with the management right to "assign work" or perhaps even to "determine the ... budget" (§ 7106(a)(1)), others might not. INS made no showing before FLRA about how the official time proposal might impact on any of its reserved rights. Indeed, at argument, the parties were unable, in response to our inquiries, to even approximate the real-world meaning of the provisions we are asked to consider. Thus, we must decide this heavily litigated, complex case in a virtual vacuum of facts.

rizing MSPB to promulgate "such regulations as may be necessary for the performance of its functions." In its regulations, MSPB has authorized payment of official time to employee witnesses or those who must respond to discovery requests. 5 C.F.R. §§ 1201.33, 1201.73(a). MSPB's regulations do not address the pay status of the parties' representatives (of which the agency's will, of course, always be on "official" time), and FLRA has concluded that no statute or regulation precludes its authorization of an agreed-upon official time provision that covers MSPB proceedings. We have found none either.

■ In this policy-laden area, with no unambiguous statutory prohibition of such clauses, considerable deference is due FLRA, and we will enforce the FLRA's order as to "official time" for union representation at appeals and hearings.

### C.

■ INS also complains about the four hours of official time available for preparation of an unfair labor practice charge. INS says that because unfair labor practice charges come before FLRA, FLRA must authorize official time under § 7131(c),[8] and the provision is thus not negotiable, notwithstanding that preparation of an unfair labor practice charge is clearly activity "in connection with" FSLMRS and would otherwise be negotiable under § 7131(d)(2). FLRA counters that preparation of the charge *precedes* FLRA hearings (indeed, no hearings may result at all), and so § 7131(c) is not the exclusive means of providing official time. FLRA's interpretation of the statute is reasonable, and we will defer to it.

We enforce FLRA's order on official time in its entirety.

### IV.

### (*Liability for Sexual Harassment*)

■ The collective bargaining agreement stated the following concerning sexual harassment (with the language about which INS particularly complains underlined):

> The employer may be responsible for its acts and those of its managers and supervisors with respect to sexual harassment regardless of whether the specific acts complained of were know[n] or should have been known by the employer, unless it can be shown that the employer took immediate and appropriate corrective action.

INS argues that the liability of an agency for acts of sexual harassment is "specifically provided for by" a federal statute, namely 42 U.S.C. § 2000e–16(c). Thus, agency responsibility for sexual harassment is not a "condition of employment" under FSLMRS, and the above provision of the agreement was properly disapproved.

FLRA offers only contradictory and question-begging arguments. First, it says that the provision merely restates the requirements of federal law. INS rejoins that the provision neither tracks statutory language nor incorporates the statute by reference. Moreover, because the "matter" is "specifically provided for" in a federal statute, it is not a negotiable "condition of employment"—period—notwithstanding that a collective bargaining agreement may simply attempt to incorporate it expressly.[9]

In a related vein, FLRA says that the provision uses the verb "may," and thus operates as a sort of admonition to the agency. Again, we do not see what the permissiveness of the verb has to do with whether the provision deals with a matter for which a statute already provides the single uniform rule.

FLRA then changes direction and says that the statute is not clear on all aspects of

---

**8.** FLRA has provided by rule that an employee shall be granted official time if it deems his participation necessary in any phase of any proceeding before FLRA. 5 C.F.R. § 2429.13.

**9.** An employee may bring a "grievance" under FSLMRS for violations of the collective bargaining agreement *and* for "any claimed violation,

misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." 5 U.S.C. § 7103(a)(9)(C). Thus, specific uniform statutory provisions affecting employment are effectively incorporated into every federal sector collective bargaining agreement.

what constitutes sexual harassment, and the agreement does not, therefore, run afoul of something "specifically provided for." This argument implicitly concedes that the provision could have independent substantive meaning and is not merely an exhortation to comply with existing legal standards. In any event, we disagree with FLRA. The lack of judicial decisions applying 42 U.S.C. § 2000e–16 to every conceivable factual scenario does not render it any less a comprehensive statute "specifically providing" a uniform rule. *See Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976) (42 U.S.C. § 2000e–16(c) "provides the exclusive judicial remedy for claims of discrimination in federal employment").[10]

In short, we agree with INS that disapproval of the sexual harassment provision was proper, and we deny enforcement of the FLRA's order as to that provision.

## ENFORCEMENT GRANTED IN PART AND DENIED IN PART.

BUTZNER, Senior Circuit Judge, concurring in part and dissenting in part:

I concur in parts I–III of the court's opinion. I respectfully dissent from part IV which denies enforcement of the provision pertaining to sexual harassment.

At issue in part IV is whether 5 U.S.C. § 7103(a)(14)(C) in conjunction with 42 U.S.C. § 2000e–16 prohibits the Immigration and Naturalization Service and the American Federation of Government Employees AFL–CIO from providing in their collective bargaining agreement the following provision:

> The employer may be responsible for its acts and those of its managers and supervisors with respect to sexual harassment regardless of whether the specific acts complained of were known or should have been known by the employer, unless it can be shown that the employer took immediate and appropriate corrective action.

10. Though 42 U.S.C. § 2000e–16's comprehensiveness and exclusivity are enough to preclude negotiation about federal sector employment discrimination, we note that the statute also constitutes a waiver of the sovereign immunity of the United States, and we must therefore be vigilant

The INS and the union agreed to this provision. The Department of Justice, exercising its oversight of the INS, objected. After the Federal Labor Relations Authority held that the provision was a proper subject of bargaining, the Department of Justice petitioned for review.

Section 7102(2) authorizes representatives of an agency's employees to engage in collective bargaining with an agency "with respect to conditions of employment." Section 7103(a)(14)(C) excludes from the definition of "conditions of employment" matters "to the extent such matters are specifically provided for by Federal Statute."

Title 42 U.S.C. § 2000e–16 prohibits a federal agency from discriminating against its employees because of their sex. This section also sets forth procedures for resolving and remedying grievances alleging sexual discrimination. It does not explain the circumstances under which the agency could become responsible for sexual harassment by the agency's managers or supervisors.

Section 7103(a)(14)(C) is based on the common sense proposition that to the extent that Congress has enacted legislation specifically dealing with a subject, an agency and its employees cannot vary the legislation by bargaining. The question arises, however, whether it is lawful for the parties to bargain over issues that Congress has not specifically addressed. The FLRA has consistently adhered to principles that respond to this question:

> We reject any interpretation of section 7103(a)(14)(C) which would hold that reference to a particular matter in a statute is sufficient to except that matter from the definition of conditions of employment. Rather, where a statute specifically provides for or establishes a particular aspect of a matter, *that aspect* of the matter is not included within the conditions of employment about which an agency is obligated to bargain.

in ensuring that the limits of that waiver are maintained. *See Irwin v. Veterans Administration*, 498 U.S. 89, 93–94, 111 S.Ct. 453, 456–57, 112 L.Ed.2d 435 (1990) (time limit in § 2000e16(c) is a condition of waiver of sovereign immunity and should be strictly construed).

*American Federal of Government Employees, AFL–CIO, Local 1931 and Department of the Navy, Naval Weapons Station, Concord, California,* 32 F.L.R.A. 1023, 1060–61 (1988) (citing cases).

This precedent, well established by the FLRA, is applicable to this case. Section 7103(a)(14)(C) precludes an agency and its employees from bargaining over whether discrimination on the basis of sex is permissible and over the procedural mandates of 42 U.S.C. § 2000e–16. But § 2000e–16 does not address the possible consequences to the agency of sexual harassment by its supervisors and managers. The FLRA's precedent establishes that § 7103(a)(14)(C) does not prohibit the parties from bargaining over this issue.

This conclusion is not the end of the matter. The sexual harassment provision must pass a second test—conformity with the law. The parties cannot insert an illegal provision into their agreement.

Although § 2000e–16 does not mention sexual harassment, the proposed provision of the bargaining agreement conforms to the proper interpretation of the statute. It is now settled that discrimination on the basis of sex includes sexual harassment that creates a hostile or abusive work environment. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 63–68, 106 S.Ct. 2399, 2403–06, 91 L.Ed.2d 49 (1986). The Department of Justice appears to have acquiesced in the proposed provision to this extent.

In stipulating the circumstances under which the INS may be responsible for its managers' and supervisors' sexual harassment, the proposed provision conforms to law. The Supreme Court dealt with this issue in *Meritor* where it said:

> We therefore decline the parties' invitation to issue a definitive rule on employer liability, but we do agree with the EEOC that Congress wanted courts to look to agency principles for guidance in this area. While such common-law principles may not be transferable in all their particulars to Title VII, Congress' decision to define "employer" to include any "agent" of an employer, 42 U.S.C. § 2000e(b), surely evinces an intent to place some limits on

the acts of employees for which employers under Title VII are to be held responsible. For this reason, we hold that the Court of Appeals erred in concluding that employers are always automatically liable for sexual harassment by their supervisors. See generally Restatement (Second) of Agency §§ 219–237 (1958). For the same reason, absence of notice to an employer does not necessarily insulate that employer from liability. *Ibid.*

*Meritor,* 477 U.S. at 72, 106 S.Ct. at 2408. The proposed provision faithfully tracks *Meritor.*

There is no cause for the Department of Justice's apprehension that the proposed provision might infringe the sovereign immunity of the United States. Section 2000e–16(d) incorporates the provisions of § 2000e–5(f) through (k). The incorporated sections provide for judicial enforcement through appropriate remedies, including monetary awards assessable against the employer. *See also* 42 U.S.C. § 1981a(a)(1) (damages for intentional discrimination violating § 2000e–16). The proposed provision in no way modifies the statutory waiver of sovereign immunity.

Finally, Article 2.A of the bargaining agreement states:

> In the administration of all matters covered by this Agreement, the parties are governed by existing or future laws; and government wide rules or regulations in effect upon the effective date of this Agreement. In the administration of this Agreement, should any conflict arise between the terms of the Agreement and any present or future laws, provisions of such laws shall supersede conflicting provisions of this agreement.

Article 2.A gives unequivocal assurance that the proposed provision on sexual harassment must comply with pertinent laws and regulations.

Dissenting, I would overrule the Department of Justice's objections to the sexual harassment provision and direct enforcement in accordance with the bargaining contract on which the INS and the union have reached agreement.

VOORHEES, Chief District Judge, concurring in part and dissenting in part:

I concur in part IV of the court's opinion. I respectfully dissent from parts I–III granting enforcement as to the collective bargaining agreement's "official time" provisions.

The question of negotiability of official time involves the proper interpretation of 5 U.S.C. § 7131(d)(2). The essence of the employment relationship is the agreement of the employee to do the employer's work and that of the employer to compensate the employee for doing that work. In derogation of management's right to assign work (5 U.S.C. § 7106(a)(2)(B)), § 7131 specifies those instances in which an employee may and may not be authorized official time, within the area of labor relations activities, for purposes other than work assigned by the employer. There is no contention that any provision of that section affirmatively permits official time for the purposes challenged by the Appellant, but only a contention that § 7131(d)(2) "does not preclude" negotiation for such official time. The wording of this section, however, under the principal of *expressio unius est exclusio alterius,* does not permit an inference that an implied, additional clause exists in aether, granting the latitude sought by Appellee. It strains credulity, and a reading of the legislative history of the section, to assert that the Congress meant to grant scope for bargaining over official time for matters not within the express terms of the section, and particularly in areas where the interests promoted are those of individual employees and not the union itself.

Likewise, an attempt to invoke § 7131(d)(2) itself on behalf of Appellants must fail. The proposals set forth in the collective bargaining agreement would require official time for union representatives to appear on behalf of employees in proceedings before the Merit Systems Protection Board (MSPB), in hearings before the Equal Employment Opportunity Commission (EEOC) and in unfair labor practice proceedings (ULP) before the Federal Labor Relations Authority. Subsection (d)(2) would permit negotiation for such official time only if it is "in connection with any other matter covered by this chapter...."

Chapter 71 covers bargaining related to conditions of employment but not "to the extent such matters are specifically provided for by Federal Statute." 5 U.S.C. § 7103(a)(14)(C). MSPB and EEOC proceedings are covered by specific federal statute outside of Chapter 71. *See, e.g.,* 5 U.S.C. §§ 1204(a)(1) and (h), §§ 7121(e) and (f), §§ 7513(d) and 7701, and 42 U.S.C. § 2000e–16(b), respectively. Official time for appearances in connection with ULP would at first glance come under § 7131(d)(2), but do not because § 7131(c) grants the authority for allowance of such time directly to the FLRA.